IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

CHRISTOPHER LITTLE                                                    PLAINTIFF

v.                                          CIVIL ACTION NO. 1:16-cv-00048-GHD-RP

MISSISSIPPI DEPARTMENT OF PUBLIC
SAFETY BUREAU OF NARCOTICS;
CITY OF FULTON, MISSISSIPPI; CHIEF
REGINALD REGGIE JOHNSON in His Official
Capacity; AGENT JOEL HILL in His Individual and
Official Capacity; and JOHN DOES 1–2 in Their
Individual and Official Capacities                                    DEFENDANTS

<u>**MEMORANDUM OPINION GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT AND DENYING AS MOOT PLAINTIFF'S MOTION TO STAY**</u>

Presently before the Court are the following: **(1)** a motion for summary judgment [46]

filed by Defendants the City of Fulton, Chief Reginald Reggie Johnson in his official capacity,

and Agent Joel Hill in his individual and official capacity; and **(2)** a motion to stay [54] filed by

Plaintiff Christopher Little. These matters are now ripe for review. Upon due consideration of

the motions, responses, replies, corresponding briefing, attachments, and exhibits, and for the

reasons stated below, the Court finds that the motion for summary judgment must be granted and

the motion to stay must be denied as moot.

### *I.     Factual and Procedural Background*

On March 17, 2016, Plaintiff Christopher Little ("Plaintiff") filed a complaint [1] against

Defendants the City of Fulton, Mississippi ("City of Fulton"); Joel Hill ("Defendant Hill"); Chief

Reginald "Reggie" Johnson ("Defendant Johnson"); and John Does 1–2 ("Defendant John

Does") (collectively, "Defendants").[1] On April 18, 2016, Defendants filed an answer [11] to the complaint.[2]

Plaintiff asserts the following claims: (1) injunction prohibiting future conduct of a similar character, kind, or nature; (2) negligence, gross negligence, and failure to hire, monitor, train, and supervise; (3) intentional and/or negligent infliction of emotional distress; (4) civil assault and battery; and (5) "[v]iolation of 42 U.S.C. § 1983 Civil Rights Violation and 28 U.S.C. § 1343 Civil Rights Violation," which apparently refers to Fourteenth Amendment due process and equal protection violations and a Fourth Amendment excessive force violation.[3]

The parties engaged in discovery. On March 29, 2017, Defendants filed a motion for summary judgment [46] to which Plaintiff filed a response and Defendants filed a reply. On June 21, 2017, Plaintiff filed a supplemental response in opposition [57] to the motion for summary judgment [46]. Subsequently, on June 29, 2017, Defendants filed a reply [59] to Plaintiff's supplemental response. On April 17, 2017, Plaintiff filed a motion to stay [54] to which Defendants filed a response.

Defendant Hill is a narcotics officer at the City of Fulton Police Department.[4] Defendant Johnson is Chief of Police of the City of Fulton, Mississippi.[5] On August 27, 2015, Defendant

---

[1] Plaintiff also initially urged this suit against Defendant Mississippi Department of Public Safety/Bureau of Narcotics. However, on May 24, 2016, the parties filed a joint stipulation of dismissal [17] as to that Defendant pursuant to Rule 41(a)(1)(A)(ii) of the Federal Rules of Civil Procedure. Accordingly, no claims remain pending against that Defendant.

[2] On July 11, 2017, the Court entered the parties' Final Pretrial Order [62]. The parties' pleadings are amended to conform to the Final Pretrial Order. *Id.* ¶ 3.

[3] *Id.* ¶ 4; Pl.'s Compl. [1] ¶¶ 29–33.

[4] Defs.' Mem. Br. Supp. Mot. Summ. J. [47] at 1; Pl.'s Resp. Opp'n to Defs.' Mot. Summ. J. [53] at 2; Final Pretrial Order [62] ¶ 8(a)–(b).

[5] Pl.'s Compl. [1] ¶ 5; Defs.' Answer [11] ¶ 5.

Hill subjected Plaintiff to a traffic stop[6] that resulted in Plaintiff's arrest for the misdemeanor crimes of disorderly conduct, resisting arrest, no tag, seatbelt violation, driving while license suspended, and no proof of insurance.[7]

Plaintiff alleges that on the way to his workplace, Plaintiff drove his vehicle to a friend's automobile body shop to use the telephone.[8] Plaintiff further alleges that while Plaintiff was exiting his car, Defendant Hill drove into the parking lot.[9] Plaintiff avers that Defendant Hill asked Plaintiff for his driver's license, and that when Plaintiff attempted to retrieve his driver's license from the inside of his car, "[Defendant] Hill forcefully grabbed [Plaintiff's] waist and pulled him out of the car."[10] Plaintiff further avers that Defendant Hill then "thought he saw [Plaintiff] stuff a white substance down his mouth, so [Defendant] Hill grabbed [Plaintiff's] jaw, trying to pry it open," and "threw [Plaintiff] to the ground and began choking him."[11] Plaintiff further alleges that Plaintiff lost consciousness twice.[12] Plaintiff maintains that Defendant Hill searched Plaintiff's car and his person, but found no narcotics or paraphernalia.[13] Plaintiff alleges that Plaintiff was then handcuffed and transported to the Itawamba County Jail.[14]

---

[6] Pl.'s Compl. [1] ¶ 10; Defs.' Answer [11] ¶ 10.

[7] Final Pretrial Order [62] ¶ 9(a)(1).

[8] Pl.'s Mem. Br. Supp. Resp. Opp'n to Defs.' Mot. Summ. J. [52] at 2 (citing Pl.'s Dep. [46-5] at 18, 23); Final Pretrial Order [62] ¶ 8(a).

[9] Final Pretrial Order [62] ¶ 8(a).

[10] *Id.*

[11] Pl.'s Mem. Br. Supp. Resp. Opp'n to Defs.' Mot. Summ. J. [52] at 2 (citing Def. Hill's Dep. [46-2] at 31; Pl.'s Dep. [46-5] at 25); Final Pretrial Order [62] ¶ 8(a).

[12] Pl.'s Mem. Br. Supp. Resp. Opp'n to Defs.' Mot. Summ. J. [52] at 3 (citing Pl.'s Dep. [46-5] at 25); Final Pretrial Order [62] ¶ 8(a).

[13] Pl.'s Mem. Br. Supp. Resp. Opp'n to Defs.' Mot. Summ. J. [52] at 3 (citing Def. Hill's Dep. [46-2] at 33–34); Final Pretrial Order [62] ¶ 8(a).

Plaintiff further alleges that paramedics from the North Mississippi Medical Center Ambulance Services were called to the jail to evaluate Plaintiff.[14] Plaintiff avers that he "sustained lost wages and missed a work day on the day of the incident"; Plaintiff further avers that "his pre-existing back issues were significantly exacerbated."[16]

Defendants' account of the aforestated events somewhat differs from Plaintiff's account. Defendants argue that a confidential informant provided Defendant Hill with a tip that Plaintiff was planning to purchase Oxycodone pills in Alabama in order to sell the pills in the parking lot of the Dixie Gas Station in Fulton, Mississippi.[17] In response to this tip, Defendant Hill parked across the street from the Dixie Gas Station in Fulton to observe the parking lot of the gas station.[18] Defendant Hill observed a small, black vehicle parked at the gas station; two vehicles then drove up to the car, parked beside it briefly, and left.[19] Defendants further maintain that Defendant Hill believed that this activity was consistent with drug activity.[20] Defendants argue that Defendant Hill was able to identify Plaintiff based on earlier encounters and Plaintiff's limp while walking.[21] Defendants further argue that Plaintiff returned to his vehicle and pulled out of the convenience store; Defendant Hill followed and observed that Plaintiff was "driving with an

---

[14] Final Pretrial Order [62] ¶ 8(a).

[15] Pl.'s Mem. Br. Supp. Resp. Opp'n to Defs.' Mot. Summ. J. [52] at 1, 3; Final Pretrial Order [62] ¶ 8(a).

[16] Final Pretrial Order [62] ¶ 8(a).

[17] Defs.' Mem. Br. Supp. Mot. Summ. J. [47] at 2 (citing Def. Hill's Dep. [46-2] at 26–28); Final Pretrial Order [62] ¶ 8(b).

[18] Defs.' Mem. Br. Supp. Mot. Summ. J. [47] at 2 (citing Def. Hill's Dep. [46-2] at 26–28); Final Pretrial Order [62] ¶ 8(b).

[19] Defs.' Mem. Br. Supp. Mot. Summ. J. [47] at 2 (citing Def. Hill's Dep. [46-2] at 26–28); Final Pretrial Order [62] ¶ 8(b).

[20] Defs.' Mem. Br. Supp. Mot. Summ. J. [47] at 3; Final Pretrial Order [62] ¶ 8(b).

[21] Defs.' Mem. Br. Supp. Mot. Summ. J. [47] at 3 (citing Def. Hill's Dep. [46-2] at 29); Final Pretrial Order [62] ¶ 8(b).

expired tag, was not wearing a seatbelt, and was driving erratically."[22] Defendants maintain that Defendant Hill activated his blue lights, but Plaintiff drove on for approximately a half mile.[23] At that point, Defendants maintain that Plaintiff stopped his vehicle at an automobile repair shop, "immediately jumped out of his vehicle[,] and questioned [Defendant] Hill as to why he was pulled over."[24] Defendants further maintain that Defendant Hill informed Plaintiff of his reasons for the stop and "requested that the Plaintiff provide him with his driver's license," but that "[i]nstead of complying, the Plaintiff 'dove' back into his vehicle."[25] Defendants maintain that while Defendant Hill was "trying to extricate the Plaintiff from the vehicle, [Defendant] Hill witnessed the Plaintiff pushing a small cellophane wrapper containing a white substance into his mouth."[26] Defendants further maintain that "[Defendant] Hill grabbed the Plaintiff's jaw in an effort to prevent him from swallowing the substance" and "told the Plaintiff to 'spit it out.' "[27] However, Defendants maintain that "Plaintiff did not comply[,] [a] struggle ensued[,] and [Defendant] Hill took the Plaintiff to the ground."[28] Defendants further argue that Plaintiff then "swallowed what was in his mouth and relaxed his jaws," and "[Defendant] Hill got up off the ground and told the Plaintiff to remain still."[29] Defendants maintain that Defendant Hill then

---

[22] Defs.' Mem. Br. Supp. Mot. Summ. J. [47] at 3 (citing Def. Hill's Dep. [46-2] at 30); Final Pretrial Order [62] ¶ 8(b).

[23] Defs.' Mem. Br. Supp. Mot. Summ. J. [47] at 3; Final Pretrial Order [62] ¶ 8(b).

[24] Defs.' Mem. Br. Supp. Mot. Summ. J. [47] at 3; Final Pretrial Order [62] ¶ 8(b).

[25] Defs.' Mem. Br. Supp. Mot. Summ. J. [47] at 3 (citing Def. Hill's Dep. [46-2] at 32); Final Pretrial Order [62] ¶ 8(b).

[26] Defs.' Mem. Br. Supp. Mot. Summ. J. [47] at 3 (citing Def. Hill's Dep. [46-2] at 30–31); Final Pretrial Order [62] ¶ 8(b).

[27] Defs.' Mem. Br. Supp. Mot. Summ. J. [47] at 3; Final Pretrial Order [62] ¶ 8(b).

[28] Defs.' Mem. Br. Supp. Mot. Summ. J. [47] at 3; Final Pretrial Order [62] ¶ 8(b).

[29] Defs.' Mem. Br. Supp. Mot. Summ. J. [47] at 3; Final Pretrial Order [62] ¶ 8(b).

called for assistance, and two officers arrived at the scene.[30] Defendants further maintain that video of Plaintiff following the traffic stop demonstrates Plaintiff did not suffer an injury from the encounter with Defendant Hill.[31] Defendants maintain that Defendant Hill was "[c]oncerned that the Plaintiff had swallowed drugs" and "called for paramedics to come to the jail to examine Plaintiff," but "Plaintiff objected to this, stating that he was fine."[32] Defendants maintain that nonetheless "[Defendant] Hill insisted that the paramedics come to the jail," and that once the paramedics arrived and took Plaintiff's vital signs, "[Plaintiff] refused any additional medical treatment."[33]

The pertinent events following the detention at Itawamba County Jail are not in dispute. Plaintiff was released on a recognizance bond.[34] Plaintiff was criminally charged with disorderly conduct, resisting arrest, no tag, seatbelt violation, driving while license suspended, and no proof of insurance.[35] Plaintiff pled *nolo contendere* to the charges in Fulton Municipal Court, was found guilty, and was sentenced to 30 days in jail suspended pending appeal in the Itawamba County Circuit Court on the charges of disorderly conduct and resisting arrest.[36] The Itawamba County Grand Jury subsequently indicted Plaintiff in Cause Number CRCR16-219 for felony

---

[30] Defs.' Mem. Br. Supp. Mot. Summ. J. [47] at 4; Final Pretrial Order [62] ¶ 8(b).

[31] Defs.' Mem. Br. Supp. Mot. Summ. J. [47] at 4 (citing Body Camera Video [46-3], Dash Camera Video [46-4]).

[32] Defs.' Mem. Br. Supp. Mot. Summ. J. [47] at 4 (citing Pl.'s Dep. [46-5] at 31); Final Pretrial Order [62] ¶ 8(b).

[33] Defs.' Mem. Br. Supp. Mot. Summ. J. [47] at 4 (citing Pl.'s Dep. [46-5] at 14–16); Final Pretrial Order [62] ¶ 8(b).

[34] Defs.' Mem. Br. Supp. Mot. Summ. J. [47] at 4 (citing Recognizance Bond [46-7]); Pl.'s Mem. Br. Supp. Resp. Opp'n to Defs.' Mot. Summ. J. [52] at 3.

[35] Defs.' Mem. Br. Supp. Mot. Summ. J. [47] at 4 (citing Charges [46-36]); Pl.'s Mot. Stay [54] at 1; Final Pretrial Order [62] ¶ 9(a)(1).

[36] Pl.'s Mot. Stay [54] at 1; City of Fulton Munic. Ct. Abstracts [54-1] at 1–6.

destruction of evidence.[37]  Subsequently, "[Plaintiff] reached a plea deal with prosecutors.  He admitted guilt as to the felony destruction of evidence charge.  In exchange, the Itawamba Circuit Court withheld acceptance of the plea and placed [Plaintiff] on probation for a year, and the misdemeanor charges were dropped."[38]  On June 12, 2017, the Circuit Court of Itawamba County dismissed with prejudice the misdemeanor charges against Plaintiff, including charges of disorderly conduct and failure to comply, and also entered an Order of Non-Adjudication on Plaintiff's charge of felony destruction of evidence/tampering with evidence.[39]

## II.  *Summary Judgment Standard*

This Court grants summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  *See* FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).  The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp.*, 477 U.S. at 322, 106 S. Ct. 2548.

---

[37] Pl.'s Mot. Stay [54] at 1–2 (citing Itawamba Cty. Indictment [54-2]); Final Pretrial Order [62] ¶ 9(a)(2)..

[38] Final Pretrial Order [62] ¶ 9(a)(3).

[39] *See* Cir. Ct. of Itawamba Cty.'s Non-Adjudication Order on Charge of Felony Destruction of Evidence/Tampering with Evidence[57-1]; Agreed Order of Dismissal on Charge of Driving While License Suspended [57-2] at 1; Agreed Order of Dismissal on Charge of Tag Violation [57-2] at 2; Agreed Order of Dismissal on Charge of Seatbelt Violation [57-2] at 3; Agreed Order of Dismissal on Charge of Resisting Arrest [57-2] at 4; Agreed Order of Dismissal on Charge of Ins. Violation [57-2] at 5; Agreed Order of Dismissal on Charge of Failure to Obey Officer [57-2] at 6.

The party moving for summary judgment bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine dispute of material fact. *See id.* at 323, 106 S. Ct. 2548. Under Rule 56(a), the burden then shifts to the nonmovant to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 324, 106 S. Ct. 2548; *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001); *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995). Where, as here, the parties dispute the facts, the Court must view the facts and draw reasonable inferences in the light most favorable to the plaintiff. *See Scott v. Harris*, 550 U.S. 372, 378, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) (internal citations omitted). "However, a nonmovant may not overcome the summary judgment standard with conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *McClure v. Boles*, 490 F. App'x 666, 667 (5th Cir. 2012) (per curiam) (citing *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007)).

### III.    Analysis and Discussion

Defendants argue in their motion for summary judgment that the claims in the case *sub judice* must be dismissed as a matter of law. As stated above, Plaintiff asserts Fourteenth Amendment due process and equal protection violation claims, a Fourth Amendment excessive force claim, a Section 1983 failure to train/supervise claim, and state law claims for intentional infliction of emotional distress, negligent infliction of emotional distress, assault and battery, negligence, gross negligence, and failure to hire/monitor/train/supervise.

Defendants argue that Plaintiff's claims must be dismissed on the following bases: **(1)** Plaintiff's Fourth Amendment excessive force claim is barred by the doctrine set forth in *Heck v.*

*Humphrey*, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994); **(2)** Defendants are immune from suit due to qualified immunity and immunity under the Mississippi Tort Claims Act (the "MTCA"); **(3)** and all claims fail due to insufficient evidence. The Court addresses these arguments as follows.

### A. *Heck v. Humphrey*

First, Defendants argue in their motion for summary judgment that Plaintiff's claims are barred by *Heck v. Humphrey*, because Plaintiff was convicted of resisting arrest and because allowing Plaintiff to pursue his excessive force claim in light of the resisting arrest claim and conviction in state court would imply the invalidity of Plaintiff's state court conviction or sentence. Defendants argue that Plaintiff could only pursue his excessive force claim in this Court if he proved that his conviction or sentence had already been invalidated.

Plaintiff filed a response in opposition and a motion to stay, conceding that *Heck* potentially barred his claims, but requesting that this Court stay the case *sub judice* until such time as his criminal convictions and charges were fully adjudicated in state court.

While these motions were still pending, Plaintiff filed a supplemental response in this case stating that *Heck* does not bar the claims, because on June 12, 2017, the Circuit Court of Itawamba County dismissed with prejudice the misdemeanor charges against Plaintiff, including charges of disorderly conduct and failure to comply, and also entered an Order of Non-Adjudication on Plaintiff's charge of felony destruction of evidence/tampering with evidence. Pl.'s Suppl. Resp. Opp'n to Defs.' Mot. Summ. J. [57] ¶ 2. Plaintiff further contends that his previously filed motion to stay is now moot in light of these developments. Plaintiff attaches the pertinent state-court documentation to his supplemental response. *See* Cir. Ct. of Itawamba Cty.'s Non-Adjudication Order on Charge of Felony Destruction of Evidence/Tampering with

Evidence[57-1]; Agreed Order of Dismissal on Charge of Driving While License Suspended [57-2] at 1; Agreed Order of Dismissal on Charge of Tag Violation [57-2] at 2; Agreed Order of Dismissal on Charge of Seatbelt Violation [57-2] at 3; Agreed Order of Dismissal on Charge of Resisting Arrest [57-2] at 4; Agreed Order of Dismissal on Charge of Ins. Violation [57-2] at 5; Agreed Order of Dismissal on Charge of Failure to Obey Officer [57-2] at 6.

Defendants subsequently filed a reply to Plaintiff's supplemental response. In their reply, Defendants concede that Plaintiff's state criminal convictions were dismissed on appeal to the Circuit Court of Itawamba County, but argue that Plaintiff's testimony under oath during his plea to the felony destruction of evidence/tampering with evidence charge has *Heck* implications, as well as other implications. Specifically, Defendants point to Plaintiff's testimony in his plea hearing that he swallowed drugs in his car to destroy of the evidence of his crime. Defendants attach the plea transcript to their reply. *See* Pl.'s State-Ct. Plea Hr'g Tr. [59-1]. Defendants cite to a portion of the plea transcript indicating that in exchange for Plaintiff's guilty plea the District Attorney agreed to allow the appealed misdemeanor charges for failure to obey and officer and resisting arrest to be dropped. *See id.* at 13.

"An excessive force claim is *Heck*-barred if the plaintiff's factual allegations supporting the claim are necessarily inconsistent with the validity of the conviction." *Hall v. Abilene's Task Force*, No. 15-10836, 2017 WL 1040587, at *1 (5th Cir. Mar. 16, 2017) (per curiam) (citing *Bush v. Strain*, 513 F.3d 492, 497–98 & n.14 (5th Cir. 2008)); *see DeLeon v. City of Corpus Christi, Tex.*, 488 F.3d 649, 656–57 (5th Cir. 2007). "Under *Heck*, 'a plaintiff who has been convicted of a crime cannot recover damages for an alleged violation of his constitutional rights if that violation arose from the same facts attendant to the charge for which he was convicted, unless he proves that his conviction or sentence' has been in some way reversed or invalidated."

*Ducksworth v. Rook*, 647 F. App'x 383, 385–86 (5th Cir. 2016) (per curiam) (citing *Bush*, 513 F.3d at 497). If claims are barred by *Heck*, the Court must dismiss those claims with prejudice to their being asserted again until the *Heck* conditions are met. *See DeLeon*, 488 F.3d at 657 (citing *Johnson v. McElveen*, 101 F.3d 423, 424 (5th Cir. 1996)). A plaintiff may only bring *Heck*-barred claims in the court if he later shows that his " 'conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.' " *Palmer v. Sessions*, No. 16-50102, --- F. App'x ---, 2017 WL 2274293, at *1 (5th Cir. May 23, 2017) (quoting *Heck*, 512 U.S. at 486–87, 114 S. Ct. 2364). Based on the foregoing, the Court finds that given the record in the case *sub judice*, including the pertinent attached documentation relating to the state-court criminal matters, Plaintiff's claims are not clearly barred by *Heck v. Humphrey*. However, as demonstrated below, his claims must nonetheless be dismissed on other grounds.

### B. Immunity

Second, Defendants argue that they are immune from suit on the claims, both due to qualified immunity and immunity under the MTCA.

#### 1. Fourth Amendment Excessive Force

Defendants argue that Defendant Hill is entitled to qualified immunity on Plaintiff's Fourth Amendment claims against him. "Section 1983 provides a cause of action against any person who deprives an individual of federally guaranteed rights 'under color' of state law." *Filarsky v. Delia*, — U.S. —, —, 132 S. Ct. 1657, 1661, 182 L. Ed. 2d 662 (Apr. 12, 2012) (quoting 42 U.S.C. § 1983). "Anyone whose conduct is 'fairly attributable to the state' can be sued as a state actor under § 1983." *See id.*, 132 S. Ct. at 1661; *see also Lugar v. Edmondson Oil*

*Co.*, 457 U.S. 922, 937, 102 S. Ct. 2744, 73 L. Ed. 2d 482 (1982). State actors enjoy various protections from liability derived from the common law, such as absolute or qualified immunity. *See Filarsky*, 132 S. Ct. at 1660, 1662 (it is well settled that "common law protections well grounded in history and reason had not been abrogated by covert inclusion in the general language of [Section] 1983") (internal quotation marks and citations omitted). "An official sued under [Section] 1983 is entitled to qualified immunity unless it is shown that the official violated a statutory or constitutional right that was 'clearly established' at the time of the challenged conduct." *Plumhoff v. Rickard*, — U.S. —, —, 134 S. Ct. 2012, 2023, 188 L. Ed. 2d 1056 (May 27, 2014) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 735, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011) (internal quotation marks and citation omitted); *see Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005)). "When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." *Atteberry*, 430 F.3d at 253 (citation omitted).

"In resolving questions of qualified immunity at summary judgment, courts engage in a two-pronged inquiry. The first asks whether the facts, '[t]aken in the light most favorable to the party asserting the injury, . . . show the officer's conduct violated a [federal] right[.]' " *Tolan v. Cotton*, — U.S. —, —, 134 S. Ct. 1861, 1863, 188 L. Ed. 2d 895 (2014) (per curiam) (quoting *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)). "The second prong of the qualified-immunity analysis asks whether the right in question was 'clearly established' at the time of the violation." *Id.*, 134 Ct. at 1866 (citing *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002)). Courts have discretion to decide which prong to consider first. *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232, 129 S. Ct. 808, 172

L. Ed. 2d 565 (2009)). "But under either prong, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." *Id.*

In the case *sub judice*, Defendants argue that Defendant Hill is entitled to qualified immunity on the Fourth Amendment excessive force claim. Although Plaintiff argues that genuine disputes of fact exist as to whether Plaintiff posed a threat to Defendant Hill, Defendants maintain that the force used by Defendant Hill was "entirely appropriate," because "[Defendant] Hill witnessed the Plaintiff attempt to swallow what appeared to [Defendant] Hill to be drugs after 'diving' back into his vehicle" and because "[Plaintiff] refused to 'spit out' what was in his mouth, resisted [Defendant] Hill's attempts to remove the drugs from [Plaintiff's] mouth, and struggled with [Defendant] Hill while he was attempting to take [Plaintiff] into custody." Defs.' Mem. Br. Supp. Mot. Summ. J. [47] at 8. Defendants maintain that Plaintiff suffered no physical injury from any alleged events giving rise to this suit; Defendants cite the videos taken immediately following the traffic stop, which are exhibits to the motion for summary judgment, as evidence supporting this argument.

"In order to state a claim for the constitutional violation of excessive force, [Plaintiff] must establish that an injury occurred that resulted directly from the use of clearly excessive force, and that the excessiveness was unreasonable." *See Ontiveros v. City of Rosenberg, Tex.*, 564 F.3d 379, 382 (5th Cir. 2009). "[A]ll claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other seizure of a free citizen should be analyzed under the Fourth Amendment and its reasonableness standard." *Graham v. Connor*, 490 U.S. 386, 395, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989) (emphasis in original).

To satisfy the first prong of an excessive force claim, a plaintiff must demonstrate that he "suffered at least some form of injury" from the defendant's actions that is more than *de minimis.*

13

*Glenn v. City of Tyler, Tex.*, 242 F.3d 307, 314 (5th Cir. 2001) (quotation marks omitted). The degree of injury necessary to meet this requirement is related to the amount of force that was constitutionally permissible under the facts of the case. *Williams v. Bramer*, 180 F.3d 699, 703–04 (5th Cir.), *decision clarified on reh'g*, 186 F.3d 633 (5th Cir. 1999). In this case, Plaintiff testified in his deposition that he suffered cuts on his arm and neck and a bruise on his neck from being thrown down on gravel and pressure being applied by Defendant Hill. Pl.'s Dep. [46-5] at 65–66. However, Plaintiff further testified that he was not treated for any injuries at the jail or at any point thereafter. *See id.* at 14 ("When I had got to the jail, [Defendant] Hill and the[y] had had some paramedics come up there and check me out. And the paramedics said I was fine, so I just went on to the house."); *id.* at 15 (testifying he has never seen a doctor for any injuries in connection with this case); *id.* at 31 (testifying that after he was informed that the paramedics would be called to the jail, he told Defendant Hill, "I'm fine"). Therefore, Plaintiff has failed to satisfy the first prong of his excessive force claim that he suffered an actionable injury, and his excessive force claim fails on this basis.

Plaintiff's excessive force claim fails for the additional reason that he fails to show that any use of force was objectively unreasonable. Plaintiff argues that "viewed in the light most favorable to [Plaintiff], Defendant Hill's use of force in this situation where there was absolutely no threat that his safety was threatened and also engag[ing] in a choke hold violated a clearly established constitutional right." Pl.'s Mem. Br. Supp. Resp. Opp'n to Defs.' Mot. Summ. J. [52] at 12. However, Plaintiff presents no evidence supporting that Defendant Hill's use of force was excessive or unreasonable, and the evidence in the record supports the opposite inference. Although the charges were later dismissed on appeal due to plea negotiations in connection with the felony destruction of evidence/tampering of evidence charge, Plaintiff pled *nolo contendere*

in state court on his criminal charges of disorderly conduct, resisting arrest, no tag, a seatbelt violation, driving while license suspended, and no proof of insurance. Defs.' Mem. Br. Supp. Mot. Summ. J. [47] at 4 (citing Charges [46-36]); Pl.'s Mot. Stay [54] at 1. Further, as the documentation attached to Defendants' reply to the supplemental response demonstrates, Plaintiff admitted under oath in his plea hearing in state court on the felony destruction of evidence/tampering with evidence charge that drugs were found on him or in his vehicle and that he swallowed drugs at the time of the events giving rise to this suit. Pl.'s Plea Hr'g Tr. [59-1] at 11–12, 15, 17–18. Given all of the foregoing, the Court finds that Plaintiff's excessive force also fails because he has not demonstrated that any force was objectively unreasonable.

In sum, Plaintiff has failed to satisfy the elements of his Fourth Amendment excessive force claim. Therefore, there is no underlying constitutional violation, and the Court need not further address the qualified immunity issue. *See Myers v. Klevenhagen*, 97 F.3d 91, 96 (5th Cir. 1996) (unnecessary for courts to reach qualified immunity issue if no alleged constitutional violation). Plaintiff's Fourth Amendment excessive force claim thus must be dismissed as a matter of law on summary judgment.

### 2.    State Law Claims

Defendants argue that the City of Fulton and Defendant Hill are immune from suit on Plaintiff's state law claims under the MTCA on the following purported bases: Defendant Hill did not act with reckless disregard for Plaintiff's rights; at the time of the alleged events giving rise to this suit, Plaintiff was engaged in criminal activity; and the allegation of intentional wrongdoing takes Defendant Hill outside the course and scope of his employment as a matter of law. These arguments are well taken.

Plaintiff asserts state law claims of intentional infliction of emotional distress, negligent infliction of emotional distress, civil assault and battery, negligence, gross negligence, and failure to hire/monitor/train/supervise.

The MTCA provides the exclusive remedy against a governmental entity or its employee. MISS. CODE ANN. § 11-46-7(1). Thus, "[a]ny claim filed against a governmental entity and its employees (for monetary relief) must be brought under [the] statutory scheme" of the MTCA. *Stuckey v. Miss. Dep't of Transp.*, No. 3:07-cv-639-TSL-JCS, 2008 WL 1868421, at *2 (S.D. Miss. Apr. 24, 2008); *Lang v. Bay St. Louis/Waveland Sch. Dist.*, 764 So. 2d 1234, 1236 (Miss. 1999). Plaintiff seeks monetary relief on his claims. Accordingly, his state-law claims are subject to the MTCA.

The MTCA waives Mississippi's sovereign immunity in "claims for money damages arising out of the torts of such governmental entities and the torts of their employees while acting within the course and scope of their employment," MISS. CODE. ANN. § 11-46-5(1), "but subjects this blanket waiver to numerous exceptions," *Phillips ex rel. Phillips v. Monroe County, Miss.*, 311 F.3d 369, 375 (5th Cir. 2002). Waiver of the state's sovereign immunity is "strictly construed in favor of the holder of the right," and the Fifth Circuit has stated that " 'the MTCA's exemptions to Mississippi's waiver should be liberally construed in favor of limiting liability,' " *Urban Developers LLC v. City of Jackson, Miss.*, 468 F.3d 281, 306 (5th Cir. 2006) (quoting *In re Foust*, 310 F.3d 849, 864 (5th Cir. 2002) (citations omitted)).

Defendants argue that they are immune from liability on the state law claims because "[Defendant Hill] was . . . acting within the course and scope of his employment as a police officer when he initially stopped and interrogated the Plaintiff based upon the apparent traffic violations and the informant's tip regarding the Plaintiff's drug activities" and because Plaintiff

was engaged in criminal activity at the time of his arrest. Defs.' Mem. Br. Supp. Mot. Summ. J. [47] at 12.

Mississippi Code § 11-46-9(1)(c) provides that sovereign immunity is not waived for "any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police or fire protection unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury." MISS. CODE ANN. § 11-46-9(1)(c). "[Plaintiff] has the burden of proving that he was injured at the time [Defendant Hill] acted in reckless disregard of [Plaintiff's] safety and well being and while [Plaintiff] was not engaged in criminal activity." *See Simpson v. City of Pickens*, 761 So. 2d 855, 859 (Miss. 2000).

The undisputed evidence demonstrates that Defendant Hill was engaged in activities relating to police protection when he performed the traffic stop on Plaintiff and the subsequent alleged events occurred. Therefore, Defendants are entitled to immunity unless Plaintiff can demonstrate both (a) that Defendant Hill acted in reckless disregard of Plaintiff's safety and well-being and (b) that Plaintiff was not engaged in criminal activity at the time of injury. *See* MISS. CODE ANN. § 11-46-9(1)(c).

"The plaintiff has the burden of proving 'reckless disregard' by a preponderance of the evidence." *Titus v. Williams*, 844 So. 2d 459, 468 (Miss. 2003) (citing *Simpson v. City of Pickens*, 761 So. 2d 855, 859 (Miss. 2000)). " '[R]eckless disregard is synonymous with willfulness and wantonness and . . . includes an element of intent to harm.' " *Cunningham ex rel. Cunningham v. City of W. Point, Miss.*, 380 F. App'x 419, 422 (5th Cir. 2010) (quoting *Foster v. Noel*, 715 So. 2d 174, 179 (Miss. 1998)). " '[R]eckless disregard' is 'a higher standard than gross negligence and embraces willful or wanton conduct which requires knowingly and

intentionally doing a thing or wrongful act.' " *Porter v. Farris*, 328 F. App'x 286, 288–89 (5th Cir. 2009) (per curiam) (quoting *City of Greenville v. Jones*, 925 So. 2d 106, 110 (Miss. 2006)). Plaintiff argues that Defendant Hill "forcefully grabbed [Plaintiff's] waist and pulled him out of the car, grabbed [Plaintiff's] jar trying to pry it open, and threw [Plaintiff] to the ground and choked him rendering him unconscious." Pl.'s Mem. Br. Supp. Resp. Opp'n to Defs.' Mot. Summ. J. [52] at 14. Plaintiff maintains that these alleged actions constitute reckless disregard and cites as a reason that "Defendant Hill alleges that he believed [Plaintiff] was reaching for a weapon and that he was swallowing drugs; however, a weapon and drugs were not found in [Plaintiff's] vehicle or on his person." *Id.* However, as demonstrated in the transcript of Plaintiff's plea hearing in state court on the felony destruction of evidence/tampering with evidence charge, Plaintiff testified under oath that drugs were found on him or in his vehicle and that he swallowed drugs at the time of the events giving rise to this suit. Pl.'s Plea Hr'g Tr. [59-1] at 11–12, 15, 17–18. This greatly negates any argument that the force administered by Defendant Hill to Plaintiff was unreasonable. The Court finds that Plaintiff has failed to demonstrate that Defendant Hill acted in reckless disregard of Plaintiff's safety and well-being, particularly given Plaintiff's admission that drugs were on his person or in his vehicle and that he swallowed them. No evidence in the record supports Plaintiff's assertion that Defendant Hill acted with reckless disregard. Thus, Defendants are immune from suit on this basis. *See Cunningham ex rel. Cunningham v. City of W. Point Miss.*, 380 F. App'x 419, 423 (5th Cir. 2010) (per curiam).

Finally, Plaintiff has not demonstrated that he was not engaged in criminal activities at the time of the alleged events giving rise to this suit. Plaintiff pled *nolo contendere* to disorderly conduct, resisting arrest, no tag, a seatbelt violation, driving while license suspended, and no

proof of insurance. Defs.' Mem. Br. Supp. Mot. Summ. J. [47] at 4 (citing Charges [46-36]); Pl.'s Mot. Stay [54] at 1. Further, the parties agree that Plaintiff pled guilty to the felony destruction of evidence charge; Plaintiff specifically admitted under oath that "at a time when [he] believed that an official proceeding might be instituted against [him] by law enforcement[] which would result in [his] arrest and prosecution, [he] willfully and intentionally acted without legal right or authority in an effort to intentionally destroy, mutilate, conceal, remove, or alter physical evidence with the intent to impair its use or availability in the pending or prospective official proceeding." Final Pretrial Order [62] ¶ 9(a)(3); Pl.'s Plea Hr'g Tr. [59-1] at 11–12, 15. Later in the hearing, Plaintiff admitted he was there because of drugs that were found on him or in his vehicle after the traffic stop and that he tried to swallow them. Pl.'s Plea Hr'g Tr. [59-1] at 17–18. At the plea hearing, the Assistant District Attorney recommended that the state court allow Plaintiff to plead guilty under the provisions of Mississippi's non-adjudication statute, Mississippi Code § 99-15-26, and that as part of the plea negotiation, the prosecutor agreed to drop the six misdemeanor traffic charges to which Plaintiff had earlier pled *nolo contendere*. *Id.* at 11; Final Pretrial Order [62] ¶ 9(a)(3). The state court informed Plaintiff at the plea hearing that although this was the prosecutor's recommendation, the state court was not bound to follow it and could instead accept Plaintiff's guilty plea, adjudicate him guilty, and sentence him to serve the maximum sentence and pay the maximum fine; Plaintiff testified under oath that he was aware of that possibility and desired to enter a plea of guilty to the felony destruction of evidence/tampering with evidence charge. Pl.'s Plea Hr'g Tr. at 12–13, 15. The state court ultimately withheld acceptance of Plaintiff's guilty plea, withheld an adjudication of guilt, and withheld sentencing pending completion of non-adjudicated probation. *Id.* at 15–16; Final Pretrial Order [62] ¶ 9(a)(3).

Based on all of the foregoing, this Court finds that the record demonstrates that Plaintiff was engaged in criminal activities at the time of his traffic stop and the subsequent events including his arrest. Plaintiff's argument that any such criminal activities were minimal is not well taken, as under Mississippi law the commission of even misdemeanor offenses is sufficient to entitle Defendants to immunity under the MTCA. *See Miss. Dep't of Pub. Safety v. Durn*, 861 So. 2d 990, 997 (Miss. 2003) ("The criminal activity supporting the exemption must be more than fortuitous, but it applies to misdemeanors as well as felonies. Misdemeanor traffic offenses are criminal activities within the statute."). Defendants are thus immune on this basis, as well.

Furthermore, Plaintiff has not demonstrated he suffered an injury from the alleged events giving rise to the suit; Defendants are immune from suit on this additional basis.

Defendants thus are immune from suit on the state law claims based on Mississippi Code § 11-46-9(1)(c) for the following reasons: Plaintiff has failed to demonstrate that Defendant Hill acted with reckless disregard; Plaintiff has failed to adequately refute that Plaintiff was engaged in criminal activity at the time of his arrest; and Plaintiff has not demonstrated that he suffered an actionable injury. Therefore, the state law claims must be dismissed as a matter of law on summary judgment.

### C. Other Claims

Finally, Defendants argue that Plaintiff's other claims must be dismissed due to insufficient evidence as a matter of law. Plaintiff does not address Defendants' arguments supporting dismissal of these claims. The Court examines each remaining claim in turn.

### 1. Fourteenth Amendment Due Process

Defendants argue that Plaintiff fails to state a Fourteenth Amendment due process claim, because he fails to allege either a denial of procedural right or that Defendant Hill's actions were shocking to the conscience. As stated, Plaintiff offers no argument in support of this claim.

Defendants' arguments are well taken. To state a Fourteenth Amendment due process claim under Section 1983, "a plaintiff must first identify a protected life, liberty or property interest and then prove that governmental action resulted in a deprivation of that interest." *Baldwin v. Daniels*, 250 F.3d 943, 946 (5th Cir. 2001). "The threshold requirement of any due process claim is the government's deprivation of a plaintiff's liberty or property interest." *McCasland v. City of Castroville, Tex.*, 514 F. App'x 446, 448 (5th Cir. 2013) (per curiam) (quoting *DePree v. Saunders*, 588 F.3d 282, 289 (5th Cir. 2009)). Therefore, unless Plaintiff has an entitlement that is sufficiently definite to be considered a liberty or property interest, the Due Process clause does not come into play. *See id.*

Plaintiff's complaint asserts no allegations that he had a liberty or property interest or that he suffered a procedural or substantive due process violation. Although substantive due process generally does not impose a duty on state actors to protect citizens from harm, *Dixon v. Alcorn Cty. Sch. Dist.*, 499 F. App'x 364, 366 (5th Cir. 2012) (per curiam) (citing *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 195–96, 109 S. Ct. 998, 103 L. Ed. 2d 249 (1989)), some courts have allowed two possible exceptions to that general rule based on *DeShaney*: (1) when the state has a "special relationship" with the citizen, such as when the state takes the person into custody or otherwise limits the person's freedom to act on his or her own behalf; and (2) when the state has created the danger that led to the person's injury, *see DeShaney*, 489 U.S. at 198–201, 109 S. Ct. 998. Suffice it to say that even if a special

relationship existed between Plaintiff and Defendants, Plaintiff has not sufficiently alleged deliberate indifference, which is required to sustain a constitutional claim on the "special relationship" theory; thus, Plaintiff has failed to state a claim for a Fourteenth Amendment violation under the "special relationship" theory. *See Broussard v. Basaldua*, 410 F. App'x 838, 839 (5th Cir. 2011) (per curiam) (citing *Walton v. Alexander*, 44 F.3d 1297, 1300–1301 (5th Cir. 1995) (en banc)). Furthermore, Plaintiff has failed to allege a state-created danger theory, and even if he had, a Fourteenth Amendment due process claim based on a state-created danger theory is not cognizable in the Fifth Circuit. *See Paraza v. Sessions*, No. 15-60727, 2017 WL 1013070, at *1 (5th Cir. Mar. 14, 2017) (per curiam) (citing *Doe ex rel. Magee v. Covington Cty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 864 (5th Cir. 2012) (en banc)); *Whitley v. Hanna*, 726 F.3d 631, 637 (5th Cir. 2013). For all of the foregoing reasons, Plaintiff's Fourteenth Amendment due process claim must be dismissed as a matter of law on summary judgment.

### 2. Fourteenth Amendment Equal Protection

With respect to Plaintiff's Fourteenth Amendment equal protection claim, Defendants argue that Plaintiff fails to allege any facts demonstrating that Plaintiff was targeted because of his race or for any other reason giving rise to an equal protection claim. As stated, Plaintiff offers no argument in support of this claim.

"The Equal Protection Clause of the Fourteenth Amendment is 'essentially a direction that all persons similarly situated should be treated alike.' " *Wood v. Collier*, 836 F.3d 534, 538 (5th Cir. 2016) (quoting *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985)). The Fourteenth Amendment's equal protection clause is designed to protect certain classes of individuals. *Sheeran v. Schoepner*, 198 F.3d 241 (5th Cir. 1999). Plaintiff has made no argument to support that he is a member of a protected class.

Accordingly, his Fourteenth Amendment equal protection claim must be dismissed as a matter of law on summary judgment.

### 3. Section 1983 Failure to Train/Supervise

Finally, Defendants argue that Plaintiff's failure to demonstrate a constitutional deprivation is fatal to his Section 1983 failure to train/supervise claim and that he cannot proceed on a *respondeat superior* liability theory. As stated, Plaintiff offers no argument in support of this claim.

Defendants' arguments are well taken. Plaintiff has failed to show either an underlying constitutional violation or a policy or practice that caused a constitutional violation. Furthermore, the law is well established that a Section 1983 claim cannot proceed on a *respondeat superior* theory, but instead can only proceed if a showing of deliberate indifference is made. *See Connick v. Thompson*, 563 U.S. 51, 70 n.12, 131 S. Ct. 1350, 179 L. Ed. 2d 417 (2011); *Beaulieu v. Lavigne*, 539 F. App'x 421, 425, 2013 WL 4478228, at *4 (5th Cir. 2013) (quoting *Sanders–Burns v. City of Plano, Tex.*, 594 F.3d 366, 380 (5th Cir. 2010)). Clearly, no such showing has been made in this case. Accordingly, Plaintiff's Section 1983 failure to train/supervise claim fails as a matter of law and must be dismissed on summary judgment.

### 4. Injunctive Claim

To the extent Plaintiff has attempted to allege a separate cause of action for injunctive relief, he has failed to support this claim with evidence. Accordingly, any such claim must also be dismissed as a matter of law on summary judgment.

### IV. Conclusion

In sum, based on all of the foregoing, Defendants' motion for summary judgment [46] is GRANTED, and all claims are DISMISSED. Plaintiff's motion to stay [54] is DENIED AS MOOT.

This case is CLOSED.

An order in accordance with this opinion shall issue this day.

THIS, the _13th_ day of July, 2017.

_____
SENIOR U.S. DISTRICT JUDGE